CAPITAL TRUST & SAVINGS BANK, BY A. J. VEIGEL, v.
M. ROY KNAUFT AND ANOTHER.[1]

July 1, 1927.

No. 26,098.

**Finding sustained that property was held in trust for defendant.**
 1. The evidence sustains the finding that the property attached was held in trust for defendant M. Roy Knauft.

**Such property may be subjected to payment of defendant's creditors.**
 2. Property held in trust for a debtor may be subjected to the payment of the claims of all his creditors.

**Bank commissioner may enforce liability of individual stockholders.**
 3. The commissioner of banks is authorized by statute to enforce the individual liability of stockholders.

Banks and Banking, 7 C. J. p. 520 n. 43 New.
Fraudulent Conveyances, 27 C. J. p. 600 n. 62, 64; p. 606 n. 27; p. 607 n. 28, 29.
Trusts, 39 Cyc. p. 85 n. 74.

Action in the district court for Ramsey county to enforce payment of stock liability. The appeal, by defendant Marie C. Knauft, is from an order, Richard D. O'Brien, J., denying a new trial, and rests upon a notice of appeal given subsequent to the one printed in the record. Affirmed.

*Morphy, Bradford, Cummins, Cummins & Lipschultz,* for appellant.

*Clifford L. Hilton,* Attorney General, *William H. Gurnee,* Assistant Attorney General, and *E. O. Wergedahl,* for respondent.

TAYLOR, C.

On May 3, 1924, plaintiff as commissioner of banks took charge of the Capital Trust & Savings Bank of St. Paul for the purpose

[1]Reported in 214 N. W. 771.

of liquidating its affairs. Its capital stock was $500,000 divided into 5,000 shares of the par value of $100 each. It will be designated as the trust company for brevity and to distinguish it from the Capital National Bank, with which it was associated. In August, 1924, an assessment of 100 per cent was levied upon its capital stock. In April, 1925, plaintiff brought this action to collect the sum of $7,500 as the assessment against defendant M. Roy Knauft on 75 shares of this capital stock, and attached two parcels of real estate in the city of St. Paul, designated as the Grand avenue property and the Third street property, as the property of defendant M. Roy Knauft, claiming that they had been conveyed to his wife, defendant Marie C. Knauft, to defraud his creditors and that she held the title in trust for him.

The defendants resided in the city of St. Paul until August 18, 1924, on which date they removed to Los Angeles, California. During all the transactions involved herein defendant M. Roy Knauft was vice-president of the Capital National Bank and a stockholder and director of the trust company. Before removing to California he disposed of all his property, unless the two parcels in controversy still belonged to him. He made no appearance in the action, but his wife answered and asserted that this real estate had been paid for out of her separate estate and was her individual property.

The court made extended findings to the effect that Mr. Knauft was liable for the amount of the assessment; that he had paid the purchase price for the property in question and was in fact the owner of it; that he had caused it to be conveyed to his wife to defraud his creditors; and that she held it in trust for him. She appealed from an order denying her motion for amended findings and judgment in her favor, or for a new trial. She contends that the evidence does not warrant a finding that the property was paid for by Mr. Knauft, nor that it was conveyed to her in fraud of his creditors, nor that she holds it in trust for him.

The testimony of both Mr. and Mrs. Knauft was taken by deposition in the state of California and constitutes the major part of the evidence on which the case was submitted. They testified

very frankly, and there is not much dispute concerning the facts. The controversy is over the conclusions to be drawn from them. Mr. Knauft admitted liability for the assessment. Both state that Mrs. Knauft's separate estate consisted of property given to her by Mr. Knauft, and claim that these gifts were made when he was financially able to make them, and for that reason were not fraudulent as to either prior or subsequent creditors. If the evidence is sufficient to sustain the finding that Mrs. Knauft holds the property in trust for her husband, it will not be necessary to consider the other questions raised, for property so held is subject to the claims of all his creditors. Williams v. Kemper, 99 Minn. 301, 109 N. W. 242; Wetherill v. Canney, 62 Minn. 341, 64 N. W. 818; 27 C. J. 600, 606.

Mr. Knauft speculated extensively in stocks, bonds, and real estate, and says that his liabilities growing out of such transactions had been as high as a quarter of a million dollars. Mrs. Knauft says that on account of the hazard attending these speculative ventures she wanted to have a separate estate, and both say that beginning in 1921 he gave her money and other property from time to time for the purpose of creating such separate estate. They kept a joint bank account upon which each drew checks at pleasure; and the money which he gave her was placed in this account and was subject to the check of either. But he claims that he never drew out any of the money in this account belonging to her without first obtaining her consent to let him have it as a loan, and that he always replaced in the account the amount so borrowed. This account was closed when the trust company failed, and a bank account was opened in the individual name of Mrs. Knauft and has been continued in her name ever since.

In 1922, Mr. Knauft bought Great Western bonds of the par value of $25,000 at about 50 cents on the dollar, out of profits he had made in a land deal, and gave these bonds to his wife. In December, 1922, he concluded to buy two vacant lots for his wife and to erect a business building thereon for her. This is the property which has been designated as the Grand avenue property. He

caused the lots to be conveyed to his brother, and later caused his brother to convey them to the American Building Company with which he had contracted to erect the building. This company erected the building, and on May 14, 1923, gave Mr. Knauft a mortgage of $12,000 on the property, and on the same day conveyed the property to Mrs. Knauft subject to the mortgage; and on that same day Mr. Knauft assigned the mortgage to her. Neither the brother nor the building company had any interest in the property, but simply acted in the transactions at Mr. Knauft's request. The mortgage covered the amount which Mr. Knauft had paid for the construction of the building. In explanation of the transaction he says he intended to sell the Great Western bonds and pay for the building out of the proceeds, but, having put up the bonds as collateral, he caused this mortgage to be executed and assigned it to her to take the place of the bonds. As he expressed it, he simply swapped the mortgage for the bonds, and she had both the title to the property and the mortgage upon it. In February, 1924, this property was sold to Abraham Fineberg for $20,000, who paid $8,000 to Mr. Knauft and assumed the mortgage of $12,000 as a part of the purchase price. A little later Mr. Knauft made an arrangement by which this mortgage was taken up and Fineberg executed two mortgages in place of it—one for $9,000 to an insurance company and one for $3,000 to Mrs. Knauft. The $9,000 received from the insurance company was used to purchase corporate stock for Mrs. Knauft, Mr. Knauft transacting the business. The mortgage of $3,000 was used to pay a note of Mr. Knauft's at one of the banks. In June, 1924, Fineberg reconveyed this property to Mrs. Knauft for the same consideration which he had given for it.

Mr. Knauft had a land deal with Den E. Lane in which he purchased the Third street property and had it conveyed to his wife on July 1, 1924. The purchase price of $4,250 was paid by the assignment to Lane of a mortgage for that amount which Knauft had previously transferred to his wife.

The trust company had over $2,000,000 invested in farm mortgages in Montana, Dakota, Minnesota, and Canada, of which over

$1,200,000 were on lands in Montana. Owing to the shrinkage in land values, many of these mortgages became uncollectible or of doubtful value. In April, 1923, the stockholders of the trust company organized a corporation known as the Columbian Company with a capital of $500,000 of common stock and $300,000 of preferred stock. Each stockholder of the trust company took the same amount of the common stock of the Columbian Company that he held in the trust company and paid for it in cash, and Knauft took 75 shares for which he paid $7,500. The $500,000 in cash paid in to the Columbian Company and the $300,000 of its preferred stock was turned over to the trust company to take the place of nearly $800,000 of the doubtful assets of the trust company. We mention this matter because appellant urges that the fact that her husband voluntarily paid $7,500 for the purpose of taking up doubtful assets of the trust company is strongly persuasive that the transactions in question were not made for the purpose of avoiding his liability as a stockholder. The other side would infer that he, as a director, knew that the trust company was shaky and that the transfers to his wife were made in an attempt to put himself in a position to escape liability in case it should ultimately be forced to close.

In December, 1924, Knauft transferred to his father 65 shares of his stock in the trust company. To accomplish this transfer, he loaned to his father, who was without funds, $6,500 to pay for the stock, and his father gave him a check for $6,500 which was passed through the bank in regular course. Knauft says that the purpose of this transfer was to enable him to place in his income report as a loss the amount he had paid to the Columbian Company on account of this stock. He makes no claim that this transfer absolved him from liability for the assessment on the stock so transferred. Judgment was obtained against his father for the assessment against this stock and an execution issued thereon was returned wholly unsatisfied.

Mrs. Knauft says that she knew nothing about business and left the control and management of all her business affairs to her husband; that he acquired property for her as he saw fit, and disposed

of it as he saw fit; that he made all the deals in respect to it, and she took no personal part in any of them except to sign such papers as he presented for her signature; that she always signed whatever he asked her to and never questioned any of his transactions, and had only such information concerning them as he gave her; that whenever he' needed any of her securities to use in his own business he used them, and told her of it; that whenever he took any of her property the matter of replacing it was left entirely to him; and that she kept no account of such matters but took his word for what he borrowed and what he paid back. She further said that "he can invest my money any way he likes because he knows more about it than I do." On February 14, 1924, Mr. Knauft gave her his note for $20,000 as representing the amount of her property which he had borrowed. He indorsed as a payment on this note the amount of the mortgage which he had transferred to her and afterwards exchanged for the Third street property, also $3,500 paid for other property conveyed to her. He kept his wife's securities with his own in a tin box at the bank and used them in his own affairs whenever he pleased and as he pleased without consulting her further than to say he had borrowed them.

Since their removal to California, Mrs. Knauft has had a bank account but her husband has not. A. corporation has been organized of which Mrs. Knauft holds all the stock except two qualifying shares. Mr. Knauft is the manager of the corporation and it seems to have been conducting an active real estate business.

The foregoing facts as well as many others not mentioned appear from the testimony of Mr. and Mrs. Knauft. We are of opinion that the trial court could legitimately infer from the facts and circumstances disclosed that the property in controversy is held in trust by Mrs. Knauft for her husband.

Some question is made as to the right of plaintiff to maintain this action. The statute expressly authorizes him to enforce the individual liability of stockholders, G. S. 1923, § 7682. As the court found that the property attached is held by his wife in trust for him, it is subject to the payment of the assessment whether the

existing creditors of the trust company became such before or after the transfers to the wife. The property having been seized under the attachment and the summons having been served on Mr. Knauft in the manner provided by statute for service on a nonresident, the judgment will be binding on both defendants as against this property.

The order denying a new trial is affirmed.